

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **BROOKLYN ROE,** | ) | |
| | ) | |
| Appellant, | ) | **WD86109** |
| | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| **DARDEN RESTAURANTS, INC.,** | ) | **August 29, 2023** |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Two: W. Douglas Thomson, Presiding Judge,
Thomas N. Chapman, Judge, and Janet Sutton, Judge**

Brooklyn Roe (Roe) appeals from a final award of workers' compensation benefits entered by the Labor and Industrial Relations Commission (the Commission). In six points on appeal, Roe contests whether the Commission erred in admitting Exhibit A, in finding that Olive Garden, USA,[1] (Employer) paid her medical bills, and in failing to award attorney fees based on the total amount of the medical bills. For the following reasons, we affirm the Commission's award.

---

[1] Darden Restaurants, Inc. owns Olive Garden, USA, hence why this appeal is filed against it. We use Olive Garden, USA, here, because Roe worked specifically for that restaurant chain at the time of her injury.

**Factual and Procedural Background**

In September 2018, employee Roe cut her finger while sorting silverware at Olive Garden. Roe notified her manager of her injury. Over the next several days, Roe's small cut became infected, resulting in her emergency hospitalization. Employer sent Roe to Corporate Care after her hospitalization. Due to her injury, Roe incurred medical expenses totaling $30,879.21.

Roe then hired an attorney[2] to pursue a worker's compensation claim for help paying her medical bills and because Roe did not feel comfortable representing herself against an attorney in trial. Roe signed a fee agreement in which her attorney would receive twenty-five percent of all benefits paid. The fee agreement included twenty-five percent of Roe's incurred medical bills resulting from her injury.

In pursuing Roe's claim with the Division of Workers' Compensation (the Division), Roe's attorney filed a claim for compensation, sent letters and emails—including to Employer and its attorney—and sent Roe for an independent medical exam. In May 2019, Roe's attorney sent a letter to Employer's attorney, stating he had placed a twenty-five percent lien on the gross proceeds of the case, including Roe's medical bills, and asked that the Employer send payment of the medical bills to their office.[3]

---

[2] In the underlying administrative hearing, two attorneys appeared on Roe's behalf. On appeal, however, Roe contests the attorney fees of just one attorney. Consistent with Roe's appeal, we will refer to only one attorney throughout this memorandum.

[3] Though Roe's attorney contacted Employer and notified Employer of the twenty-five percent lien on Roe's medical bills, Employer was not bound by the letter. As noted by the Commission:

> The case of *Landon Sterling v. Mid-America Inc.*, 456 S.W. 3rd 473, 2014 clearly states that an employer does not waive the right to direct payment of Workers' Compensation claimant's medical bills by initially denying liability for claimant's medical treatment, despite an argument that this practice interfered with the

In January 2020, following a discussion with the Administrative Law Judge (ALJ), Employer paid Roe's total medical bills. Employer paid $24,328.63 of the original $30,494.21 total bill following a discount by Roe's medical providers. After paying Roe's medical bills, Employer sent copies of all paid medical bills and their associated explanation of benefits with a letter to Roe's attorney. Employer' attorney's letter stated:

> Pursuant to our conversation with [the ALJ] on April 3, 2020, enclosed is a breakdown of the medical payments made directly to the medical providers by my client along with the associated explanation of benefits. Please be advised that it is our intention to introduce this information into evidence at any trial or hearing for the issue of the disputed medical bills.

Though Employer paid all her medical bills, as evidenced by the checks, explanations of benefits, and letter from Employer's attorney, Roe was not aware "that any payments had been made on her behalf by the [E]mployer at any time" and still believed her medical bills were outstanding. Roe admitted she had not received a bill from any medical provider for treating her injury. Roe's attorney also admitted that in early 2020 he received an email stating that Employer would pay Roe's medical bills and he admitted that he received a letter from the Employer's counsel stating that Employer had paid all of Roe's medical bills in January 2020. The record is not clear, however, why Roe remained unaware her medical bills were paid despite Employer informing her attorney and providing proof of payment. Nor does the record show why Roe's attorney did not contact Roe's medical providers directly to independently confirm whether Employer paid Roe's medical bills.

Although Employer already paid Roe's medical bills and communicated that it had done so to Roe's attorney, Roe's attorney continued to pursue payment of Roe's medical bills. Roe's

claimant's attorney's ability to collect attorney's fees for effort expended in recovering payment for a claimant's medical expenses.

attorney continued to provide services by pursuing a notice of deposition of a corporate representative and subpoena duces tecum, along with two writs of mandamus.

Before the administrative hearing, the parties stipulated that Olive Garden, USA, was Roe's employer, that Employer was fully insured by worker's compensation insurance, that Roe's injury arose out of the course of her employment, that Roe notified her employer as required of her injury, and that Employer had not paid anything in total temporary disability benefits to date.

The issues to be presented at the hearing were: (1) a determination of Roe's average weekly wage and compensation rates; (2) whether Employer needed to reimburse Roe for medical expenses totaling $30,879.21; (3) whether Roe suffered any disability and, if so, the nature and extent of Roe's disability; (4) whether Roe suffered any disfigurement to her left upper extremity at the hand; (5) whether Roe's attorney's services were necessary in obtaining payment of Roe's past medical bills by the Employer just prior to the date of March 31, 2020; (6) whether Roe's attorney made specific efforts to recover past medical bills from the Employer; and (7) whether Roe's attorney's fees of twenty-five percent of all benefits including past medical bills were fair and reasonable.

In March 2022, two years after Employer paid Roe's medical bills, the parties appeared for a final hearing before the Division's ALJ. During the hearing, Employer introduced, and the ALJ admitted into evidence over Roe's objection, Exhibit A. Exhibit A included an affidavit by the records custodian at Gallagher Bassett Services, Inc., Employer's insurance company, as well as the nine separate checks written from the insurance company to Roe's medical providers with accompanying explanations of benefits itemizing all expenses paid. Roe's attorney objected to Exhibit A, arguing the documents were insufficient proof of payment, were hearsay, and violated

Roe's due process rights. The ALJ overruled Roe's objection, stating Exhibit A constituted a valid business record.

The ALJ also admitted Exhibit E, which Roe did not dispute, containing an accompanying letter from Employer's attorney explaining Exhibit A. Employer sent Roe's attorney the documents that comprised Exhibit A along with this letter in April 2020.

Nor did Roe present any evidence rebutting the evidence of payment in Exhibits A and E, leading the ALJ to conclude:

> Wherefore, as it appears the employer has previously negotiated and paid the medical bills incurred by [Roe] for her treatment and, further, is willing to hold [Roe] harmless for any outstanding bills which may be produced for her medical care from her injury of September 13, 2018, this [c]ourt finds that the [E]mployer is not required to pay medical bills totaling $30,879.21 as those bills have previously been paid by the [E]mployer.

The ALJ also noted in its findings of fact that, at the time of the hearing, Roe believed she was still liable for her medical bills and did not know Employer paid her medical bills in January 2020. Likewise, the ALJ noted that Roe's attorney "ha[d] never told [Roe] that the bills were paid" and that to Roe's knowledge, "at no point ha[d] the employer offered to pay the bills."

As a result of this hearing, the ALJ awarded Roe $4,669.00 in permanent partial disability and an additional $533.60 for disfigurement, for a total $5,202.60 in benefits. The ALJ limited Roe's attorney fees to twenty-five percent of the permanent partial disability award, not including Roe's medical expenses, since those expenses were already paid two years prior.

In June 2022, Roe appealed to the Commission, arguing the ALJ erred in the admission of Exhibit A, that Exhibit A constituted insufficient proof of payment, and disputing the ALJ's attorney fee award. In February 2023, the Commission affirmed and adopted the ALJ's

5

decision,[4] finding that the ALJ's award allowing compensation and limiting Roe's attorney fee lien to 25% of the permanent partial disability awarded was supported by competent and substantial evidence. Roe appeals.

## Standard of Review

Under article V, section 18 of the Missouri Constitution, we review the Commission's decision to determine if it is "supported by competent and substantial evidence upon the whole record." *Steinbach v. Maxion Wheels, Sedalia, LLC*, 667 S.W.3d 188, 195 (Mo. App. W.D. 2023) (quoting *Cosby v. Treasurer of State*, 579 S.W.3d 202, 205 (Mo. banc 2019)). Section 287.495[5] sets forth the standard we must apply when reviewing the Commission's final award, stating:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
> (1) That the commission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the commission do not support the award;
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1.[6] "On appeal, the Commission's factual findings shall be conclusive and binding in the absence of fraud, and no additional evidence shall be heard." *Klecka v. Treasurer of*

---

[4] For clarity's sake, except where the context indicates otherwise, we refer to the ALJ's findings as the Commission's because "[t]his Court reviews the findings and award of the Commission, not the ALJ" but "where the Commission affirms the ALJ's [a]ward and incorporates the ALJ's findings by reference into the Commission's Final Award, as is the case here, we review for error the ALJ's findings and conclusions *as adopted by the Commission*." *Greig v. McCaleb*, 638 S.W.3d 600, 603 (Mo. App. W.D. 2021) (emphasis added).

[5] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, and all rule references are to the Missouri Supreme Court Rules 2023.

[6] Roe does not direct this Court to which of section 287.495's grounds she is relying on for each of her six points. Thus, Roe fails to state the specific applicable standard of review for each of her claims of error as required by Rule 84.04(e). But because we prefer to decide cases on their

*Missouri*, 644 S.W.3d 562, 565 (Mo. banc 2022) (citing § 287.495.1). We also defer "to the Commission's determinations regarding the credibility of witnesses and the weight given to conflicting evidence." *Id.* at 565–66.

### Legal Analysis

Roe brings six points on appeal, relating to the admission of Exhibit A and thereby the calculation of attorney's fees. All of Roe's claims on appeal depend on a single underlying contention: that employer did not pay Roe's medical bills—despite Employer offering proof and communicating its payments through her attorney—thus she should be awarded the full amount of her medical bills and that her attorney remains entitled to twenty-five percent of Roe's total medical bills as payment for his fees. We affirm the Commission's decision.

#### *Point I: Improper Point Relied On*

In Roe's first point, she argues, "The Commission erred in admitting Employer's Exhibit A because Exhibit A violated Roe's due process rights by admitting testimony she was precluded from obtaining, in that the U.S. Constitution mandates the opportunity to confront and cross-examine adverse witnesses."

Points relied on are central to a brief's formation. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). Rule 84.04 requires that, when appealing an administrative agency's decision, points relied on must "(A) Identify the administrative ruling or action the appellant challenges; (B) State concisely the legal reasons for the appellant's claim of reversible error; and (C) Explain in summary fashion why, in the context of the case, those legal reasons support the

---

merits, we gratuitously exercise our discretion to address Roe's claims on the merits as able. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022) (stating that we have "discretion to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits.").

claim of reversible error." Rule 84.04(d)(2). The points relied on appealing an administrative ruling shall substantially follow the form:

> The [name of agency] erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review], in that [explain why, in the context of the case, the legal reasons support the claim of reversible error].

*Id.*

"The purpose of the briefing requirements regarding points relied on is to give notice to the party opponent of the precise matter which must be contended with and answered and to inform the court of the issues presented for resolution." *Acton v. Rahn*, 611 S.W.3d 897, 901–02 (Mo. App. W.D. 2020) (citation omitted). *See Lexow*, 643 S.W.3d at 505. "A point relied on which does not state 'wherein and why' the trial court [or administrative agency] erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Lexow*, 643 S.W.3d at 505 (citation omitted). "A deficient point relied on requires the respondent and appellate court to search the remainder of the brief to discern the appellant's assertion and, beyond causing a waste of resources, risks the appellant's argument being understood or framed in an unintended manner." *Hicks v. Northland-Smithville*, 655 S.W.3d 641, 646 (Mo. App. W.D. 2022) (quoting *Lexow*, 643 S.W.3d at 505). We cannot consider a point relied on where "we would have to essentially guess what the point is and then sift through the legal file in an attempt to find support for the perceived point." *Acton*, 611 S.W.3d at 902.

Roe's point I is deficient because it requires such guesswork that we cannot discern wherein and why the Commission erred. Roe's point I does not follow Rule 84.04(d)'s designated formula and Roe's challenged ruling, the admission of Exhibit A, is inconsistent with her legal reasons claiming reversible error.

8

We cannot discern whether Roe is appealing that the Commission erred in admitting Exhibit A or whether Roe is appealing that she was erroneously precluded from deposing a witness. Roe's argument does not state how the Commission violated her due process rights in admitting Exhibit A over her attorney's objections. Rather, Roe's argument focuses on how the Commission violated her due process rights "by precluding her from taking a deposition to verify actual payment of [Roe's] past medical bills . . . ."

Nor can we discern how permitting Roe to depose Employer's corporate representative from Florida to "verify actual payment of [Roe's] past medical bills" would impact Exhibit A's admissibility. This deposition testimony would speak only to Exhibit A's credibility, not its admissibility.

Roe does not articulate how her inability to depose Employer's corporate representative would have prevented Exhibit A's admission in her point relied on or in her argument. As the Commission stated, "[Roe]'s attorney asserts he was wanting to confirm payment of the medical bills by deposing a corporate representative. This [c]ourt does not understand why or how a corporate representative from the State of Florida would technically have any knowledge thereof."[7] Nor could Employer discern Roe's argument, stating that "it is difficult to discern the specific allegation of error being asserted" and, that Roe's first point seemed to argue "that a violation of due process occurred because [Employer] legally and successfully objected to producing a corporate representative after the bills at issue had already been paid."

---

[7] Roe filed a notice of subpoena duces tecum seeking to depose the "designated spokesman" for Employer and the ALJ issued an order quashing the subpoena duces tecum. Roe filed a petition for writ of mandamus with this Court in July 2020, asking us to vacate the ALJ's order quashing the notice of deposition and subpoena duces tecum. We denied the writ.

Because we would need to speculate to determine Roe's point I, we dismiss point I as deficient.

*Point II: Admission of Exhibit A*

In point II, Roe argues the Commission erred in admitting Exhibit A because the exhibit was inadmissible hearsay because the business records affidavit was not compliant with section 490.680. "An ALJ's evidentiary decisions affirmed by the Commission will not be overturned absent an abuse of discretion." *Weibrecht v. Treasurer of Missouri*, 659 S.W.3d 588, 592 (Mo. banc 2023) (citing *Otwell v. Treasurer of Missouri*, 634 S.W.3d 850, 857 (Mo. App. E.D. 2021)). The Commission abuses its discretion "when a decision 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id.* (citation omitted).

Section 490.680 provides for the business records evidentiary exception, stating:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

This business records exception "allows the admission of evidence without the necessity of identifying, locating, and producing as witnesses the individuals who made each entry in the regular course of business." *Discover Bank v. Smith*, 326 S.W.3d 120, 123 (Mo. App. S.D. 2010) (citation omitted). When section 490.680's requirements are met, "the statute invests the record with a presumptive verity, and so excepts them from the hearsay rule." *Id.* (citations omitted). Further, section 490.692.1 states:

Any records *or copies of records* reproduced in the ordinary course of business by any photographic, photostatic, microfilm, microcard, miniature photographic, optical disk imaging, or other process which accurately reproduces or forms a durable medium for so reproducing the original that would be admissible under

10

sections 490.660 to 490.690 shall be admissible as a business record, subject to other substantive or procedural objections.

(Emphasis added).

Here, the Commission affirmed the ALJ's evidentiary ruling that Exhibit A complied with the business records statute. First, Employer's Exhibit A contained an affidavit from Employer's insurance provider's records custodian stating:

> I am a Custodian of the records of Gallagher Bassett Services, Inc. Attached hereto are 36 pages of records from Gallagher Bassett Services, Inc. These 36 pages of records are kept by in [sic] the regular course of business, and it was the regular course of business of Gallagher Bassett Services, Inc for an employee or representative of Gallagher Bassett Services, Inc with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion or diagnosis. The records attached hereto are the original or exact duplicates of the original.

Second, Exhibit A included nine separate checks written from Gallagher Bassett Services, Inc. to Roe's medical providers, each with an explanation of benefits itemizing all expenses paid. Exhibit A showed that Employer paid $24,328.63 of Roe's total $30,879.21 in medical expenses because Employer negotiated a discount with the medical providers. Finally, Exhibit E, admitted without objection, contained a letter from Employer's attorney to Roe's attorney explaining the contents of Exhibit A to be "a breakdown of the medical payments made directly to the medical providers by my client along with the associated explanation of benefits."

In its findings of fact, the ALJ wrote:

> Explanation of Benefits are common insurance practice. They show the initial bills and the contractual or discounted payments. [Roe] argues the attached "checks" were marked "non-negotiable." These are basically the "carbon copies" of the check that was actually sent to the health care provider. This [c]ourt has the authority to determine the weight of the evidence herein. These Explanation of Benefits and check copies are information to the court that the employer negotiated payment of [Roe]'s medical bills. Attached to these documents in Exhibit A was the affidavit of . . . the custodian of records for Gallagher Bassett Services, Inc. It is noted that these 36 pages which make up Exhibit A were records that were kept by and in the regular course of business. It is further noted

11

that the records attached thereto were the original or exact duplicates of the original.  As noted, these documents were the Explanation of Benefits denoting the bills submitted to Gallagher Bassett insurance, the amount paid and in a number of cases, a copy of the check itself.

The Commission did not abuse its discretion in affirming the ALJ's evidentiary ruling that Exhibit A constituted an admissible business record.  As required by section 490.680, Employer provided the affidavit of its insurance provider's records custodian who identified Exhibit A as "[t]hese 36 pages" and "the records attached hereto," its mode of preparation, and that Gallagher Bassett Services, Inc. made Exhibit A in the regular course of business at or near the time of the act, condition, or event.[8]

That the checks were "the original or exact duplicates of the original" falls under section 490.692, which permits copies of records reproduced in the ordinary course of business, as occurred in Exhibit A.  That Employer's insurance company created the business records is immaterial, as section 490.680 only requires the record to be made by a "custodian or other qualified witness," and Gallagher Bassett Services, Inc. itself negotiated and paid Roe's bills.  Moreover, because Exhibit A was properly admitted under the business record exception, it cannot be hearsay.  *See Discover Bank*, 326 S.W.3d at 123.

Point II is denied.

---

[8]  In her point relied on, Roe argues that "the business record affidavit fails to identify the business records within . . . ."  Roe relies on *Discover Bank v. Smith*, 326 S.W.3d 120 (Mo. App. S.D. 2010), claiming that this case "rejected a vague reference to the files attached to the [b]usiness [r]ecord [a]ffidavit" and that this is equally applicable to the records custodian affidavit in the case before us.

*Discover Bank* explicitly addressed the appellant's arguments that "there was no foundation laid concerning the mode of preparation of the documents at issue, whether the documents were made in the regular course of business, and whether they were made 'at or near the time of the act, condition or event.'"  326 S.W.3d 120, 125 (Mo. App. S.D. 2010).  We find *Discover Bank* inapplicable here in that the affidavit in the present case complied with section 490.680's requirements.

*Points III and IV: The Commission's "Theories"*

In points III and IV, Roe argues the Commission erred in "theorizing Employer had paid Roe's past medical bills" and in "theorizing that Roe should have contacted the medical providers to obtain confirmation that Employer had paid the medical bills . . . ." Before we continue discussing Roe's third and fourth points, we must note that the Commission did not "theorize" in making its evidentiary ruling, but made required findings of fact in accordance with its role. § 287.495. Alleging the Commission "theorized" is both improper and incorrect.

Again, "the findings of fact made by the commission within its powers shall be conclusive and binding." § 287.495.1. While we review issues of law *de novo*, we defer "to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." *Steinbach*, 667 S.W.3d at 195. "The Commission, as the finder of fact, is free to believe or disbelieve any evidence." *Id.* (citation omitted). "To the extent that the Commission affirmed and adopted the findings and conclusions of the ALJ, the appellate court reviews the ALJ's findings and conclusions for error." *Id.* (citing *Hayes v. Ginger C, LLC*, 582 S.W.3d 140, 146 (Mo. App. W.D. 2019)).

Roe contends, without any evidentiary support, that "the record is devoid of any evidence of payment." Specifically, Roe alleges that "[t]he Commission's theory that Roe's $30,879.21 past medical bills were paid by Employer is not supported by Missouri law or the evidence presented," and that "[n]o evidence of actual payment by Employer exists, and the math does not add up to $30,879.21."

While Roe disagrees with the Commission's evidentiary ruling, Roe cannot simply ignore the admitted evidence in Exhibits A and E. The Commission, by adopting the Division's decision, found that Exhibit A was, in fact, "records that were kept by and in the regular course

13

of business" and that "these documents were the Explanation of Benefits denoting the bills submitted to Gallagher Bassett insurance, the amount paid and in a number of cases, a copy of the check itself." Thus, the Commission found that Employer was "not required to pay medical bills totaling $30,879.21 as those bills have previously been paid by the [E]mployer."

Furthermore, Roe incorrectly states that the Commission impermissibly shifted the burden of proof to Roe to establish that Employer did not pay Roe's medical bills. In its findings of fact, the ALJ noted:

> If [Roe]'s attorney did not believe employer's counsel, a fellow member of the bar, a more direct and easier way to determine that said bills had been paid would have simply been to contact the medical providers to confirm such information. Further it is concerning to this [c]ourt that based on the evidence, [Roe]'s attorney made no effort to advise his client that the employer had informed him that the bills would be paid or that reported proof of payment of the bills had been received by him or that the bills had been paid on her behalf.

Here, the Commission did not shift the burden of proof onto Roe to show that her medical bills were not paid, but rather the Commission simply suggested that Roe could have easily confirmed the payment of the bills to her own providers. Were Exhibit A as untrustworthy as Roe asserts, Roe made little independent investigation to confirm its reliability, especially considering her assertion accused a fellow attorney of deceiving the ALJ and thereby the Commission.

Because the Commission properly admitted Exhibit A and found those checks to be credible evidence, we are bound by the Commission's factual determination that Employer met its burden to show that Employer paid Roe's medical bills.

Points III and IV are denied.

### Points V and VI: Failure to Award Attorney Fees

In points V and VI, Roe argues that the Commission erred in not awarding attorney fees on Roe's paid medical bills. In point V, Roe argues that the Commission should have awarded attorney fees on her paid medical bills because "the record is undisputed and uncontroverted that

14

the services of Roe's attorney was necessary to secure payment of Roe's past medical bills." In point VI, Roe asserts that the Commission should have awarded attorney fees on her medical bills because "the record is undisputed and uncontroverted that the payment would not have been made without Roe's attorney's specific efforts in pursuing the issue."[9]

Section 287.260 provides:

> All attorney's fees for services in connection with this chapter shall be subject to regulation by the division or the commission and shall be limited to such charges as are fair and reasonable and the division or the commission shall have jurisdiction to hear and determine all disputes concerning the same.

§ 287.260.1. Further, the Missouri Code of State Regulations provides:

> If the services of an attorney are found to be necessary in proceedings for compensation, the administrative law judge shall set a reasonable fee considering relevant factors which may include, but are not limited to, the nature, character and amount of services rendered, the amount in dispute, and the complexity of the case and may allow a lien on the compensation due to the claimant.

8 C.S.R. § 50–2.010(15).

"[U]nder Missouri law, the Commission is authorized to hear all disputes concerning attorney's fees and to set a reasonable fee or lien after considering all relevant factors." *Sterling v. Mid Am. Car, Inc.*, 456 S.W.3d 473, 476 (Mo. App. W.D. 2014). "[W]hile attorney's fees can be based upon the entire award, including medical bills and expenses, such fees normally are not awarded unless litigation is necessary for securing payment." *Id.* at 477.

The Commission addressed Roe's attorney fees and whether Roe's attorney made specific efforts to recover past medical bills in adopting the ALJ's findings of fact. The Commission awarded attorney fees by ordering "[t]he compensation awarded to [Roe] shall be

---

[9] We note that in point V, Roe again improperly claims the Commission "theorized" in that the Commission "theorized" Employer paid Roe's medical bills. Again, the Commission did not "theorize," but made findings of fact within its authority under section 287.495.1.

subject to a lien in the amount of 25% of the permanent partial disability benefits only hereunder in favor of [Roe's attorney] for necessary legal services rendered to [Roe]." The Commission so determined attorney's fees based on the specific efforts Roe's attorney made to recover Roe's medical bills.

In its findings of fact, the ALJ spent three pages addressing (1) whether the services of Roe's attorney were necessary in obtaining payment of her medical bills, (2) whether Roe's attorney made specific efforts to recover past medical bills, and (3) whether Roe's attorney's twenty-five percent contingency fee of all benefits paid, including past medical bills, was fair and reasonable. The ALJ determined that Roe's attorney's services were necessary to obtain payment of her medical bills. The ALJ also determined that "[a] large amount of additional work was done by [Roe]'s attorney," which occurred "after the bills had in fact been paid and after [Roe's] attorney had notice the bills were paid." The ALJ concluded, "The majority of the claimed hours of work were *after* the bills had already been paid" and "[t]his [c]ourt sees the efforts of [Roe]'s attorney after the bills were paid in 2020 as unnecessary." (Emphasis added).

Because Roe's attorney worked the majority of hours *after* Employer paid Roe's medical bills in January 2020, the ALJ limited Roe's attorney fees to "25% of the permanent partial disability awarded" since, "[t]he amount of work done prior to the payment of the medical bills was limited to about 17 hours with additional time expended for negotiations of settlement which were not fruitful owing to [Roe]'s attorney desiring additional fees from the amount of the medical bills paid."

The ALJ , however, made additional comments central to this appeal. In its findings of fact, the ALJ chastised Roe's attorney about the needless work performed as well as Roe's attorney's failure to communicate with his client. The ALJ wrote:

16

[I]t is concerning to this [c]ourt that based on the evidence, [Roe]'s attorney made no effort to advise his client that the employer had informed him that the bills would be paid or that reported proof of payment of the bills had been received by him or that the bills had been paid on her behalf. [Roe] testified, as did her mother, that they believed the bills had not been paid and, to their minds, the bills were still due and owing. . . . This case was prolonged for an additional two years for reasons unknown to this [c]ourt after the bills were paid. It appears that the majority of the time spent after these bills were paid in January 2020 were in the unnecessary pursuit of a [s]ubpoena [d]uces [t]ecum and then a [w]rit of [m]andamus to depose a corporate executive who may or may not have had any information with regard to these bills. It further appears that time spent preparing for trial, basically over the ability to obtain their attorney's fees on medical bills that had already been paid was equally unnecessary.

The Commission acted within its authority under section 287.260 in determining the fair and reasonable amount of Roe's attorney fees to compensate for services rendered "in obtaining payment of her medical bills as well as permanent partial disability benefits." We see no reason to disturb the Commission's findings.

Points V and VI are denied.

**Conclusion**

The Commission's decision is affirmed.

_____
Janet Sutton, Judge

W. Douglas Thomson, P.J., and Thomas N. Chapman, J., concur.

17